FREDERICK W. GIDDINGS, EXECUTOR, vs. CORNELIA A. GIDDINGS ET AL.

First Judicial District, Hartford, October Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

As a general rule a formal revocation of a devise or legacy will not be permitted to annul the gift, if the revocation is in terms based upon the assumption of an event or condition which in fact has no existence.

But the general rule is only in aid of the testator's intent, and has no application if it appears from the revoking instrument that the testator intended to determine for himself the existence or non-existence of the grounds of revocation.

A will contained the following provisions: I give to my son W my block on Glen street; to my son F my house and lot on Cedar street; to my son

*G* my house and lot on West Main street. All the residue of my estate both real and personal I give to my three sons, *W*, *F*, and *G*, share and share alike. I give to my son *G* after the death of my said wife, the house and lot on West Main street. Subsequently the following codicil was executed: "Whereas since the execution of my said will I have sold the house and lot on West Main street, devised to *G*, I hereby revoke that portion of said will. I have also sold my block on Glen street, devised to *W*. I therefore give to him the proceeds, five thousand dollars, instead. I hereby republish and confirm my said will, except as hereby changed." At the date of the execution of the codicil the block on Glen street had been sold, but the house and lot on West Main street had not been sold, and was not sold at the date of the testator's death, but was still owned by him. The testator left surviving, his widow, the three sons named, and a grandson, the child of a deceased daughter, who were his heirs at law. In a suit to determine the construction of the will it was *held :—*

1. That the devise to *G* contained in the will was revoked by the codicil.
2. That the legal effect of the codicil, which expressly ratified and republished the will except as changed thereby, was to eliminate from the will all reference to the West Main street property, and that such property became part of the residuum of the testator's estate.

The case of *Remington* v. *American Bible Society et al.*, 44 Conn., 512, distinguished.

[Argued October 2d—decided December 1st, 1894.]

SUIT to determine the validity and construction of the will and codicil of William W. Giddings, of New Britain, deceased; brought to the Superior Court in Hartford County and reserved by the court, *Shumway, J.*, upon the facts stated in the complaint, for the advice of this court.

The case is sufficiently stated in the opinion.

*Lyman S. Burr*, for the executor.

I. Did the testator by his said codicil revoke and annul section seven of his will?

Jarman in his work on Wills, Vol. I., p. 351, says on this point: "Where a testator by a codicil revokes a devise or bequest in his will, or in a previous codicil, expressly grounding such revocation on the assumption of a fact, which turns out to be false, the revocation does not take effect, being, it is considered, conditional, and dependent on a contingency which fails." And that dictum has been followed by this court in *Dunham* v. *Averill*, 45 Conn., 61.

In the case at bar the testator intended to revoke section seven of his will, because he had sold the property by said section devised. That was his intention. It was a revocation, conditional upon a sale of the property named and none other. He died without selling the property. The condition never took effect, and the codicil, so far as pertains to section seven, would seem to be void. *Gifford* v. *Dyer*, 2 R. I., 99; *Campbell* v. *French*, 3 Ves., 321; *Evans* v. *Evans*, 10 Adol. & Ellis, 228.

II. If said codicil is operative and revokes section seven of said will, does said real estate therein specified become property intestate to be distributed according to law among the heirs at law of said testator, or does it become part of the residuum of said estate, to be distributed under the ninth clause of said will, bequeathing and devising all the residue of said estate, both real and personal?

It appears to be the law in this State that where a devise of real estate lapses, or where such a devise is inoperative, such real estate does not become a part of the residuum, but descends to the heir at law. The law as to personal estate is different. *Greene et al.* v. *Dennis*, 6 Conn., 292; *Brewster* v. *McCall*, 15 id., 274; *Remington* v. *Am. Bible Soc.*, 44 id., 512.

*Frank L. Hungerford*, for George W. Giddings.

The principal question raised by this suit, is whether section seven of the will is revoked by the codicil.

Applying the principles of law established by the following authorities, to the facts in this case, there is no revocation of the devise to George W. Giddings, and section seven of the will must stand. Jarman on Wills, Vol. I., p. 351; Schouler on Wills, § 410; I Williams on Executors, 5th Ed., 149; Redfield on Wills, Vol. I., pp. 358, 359; *Mordecai* v. *Boylen*, 6 Jones Eq. (N. C.), 365; *Gifford* v. *Dyer*, 2 R. I., 99; I Powell on Devises, 523, 525, note (6); *Campbell* v. *French*, 3 Ves., 321; *Crosswaite* v. *Dean*, L. R., 5 Eq., 245; *Kennell* v. *Abbott*, 4 Ves. 802; *Doe* v. *Evans*, 10 Ad. & El.,

228; *Barclay* v. *Maskelyne*, 1 Johns, 124; I Williams on Executors, 173, 174; *Shipwith* v. *Cabell*, 19 Gratt., 758.

*Donald T. Warner*, with whom was *Wellington B. Smith*, for William H. Giddings.

I. The codicil did exactly what the testator intended to do, and said he did do, viz: revoke the devise of house and lot on West Main street to his son George.

It is undoubted and unquestioned law that in construing a will the governing principle is the intention of the testator, gathered from the whole will and surrounding circumstances; and while former decisions construing similar language by other testators are valuable as showing what the courts have previously determined the testator's intention to be, still, if from the language of the particular will in question and surrounding circumstances it appears that the intention of the testator was other than the court had previously decided such language to mean under other circumstances, the court will not consider the former decisions as a binding rule and precedent, but will be guided by the manifest intention of the testator in the particular case before it. *Lyon* v. *Acker*, 33 Conn., 225; I Redfield on Wills, p. 423, § 5. The codicil by revoking the devise to George, though obscured by the allegation recited under a whereas (and perhaps purposely), affects the equal division of his estate among the three natural objects of his bounty, which is his apparent intention in every other portion of his will, including the remainder of the codicil.

The testator, at the time of revoking the devise to George, must have known from the very nature of things whether he had sold the land so devised or not. It was not a mistake as to fact, but a misstatement with full knowledge. It does not come within the rule laid down by Jarman and quoted in *Dunham* v. *Averill*, 45 Conn., 82, that "where a testator, by a codicil revokes a devise or bequest in his will or in a previous codicil, expressly grounding such revocation on an assumption of fact which turns out to be false, the revocation does not take effect; being, it is considered con-

ditional and dependent on a contingency which fails." All the cases we have been able to find where this rule prevails, are those where testators have revoked legacies or devises upon the belief or information that the legatees or devisees were dead; and the reason of a rule in such instances is apparent.

II. Said devise being revoked, the property fell into the residuum, and should be distributed thereunder.

The will and codicil are to be taken together and construed as one instrument. I Redfield on Wills, p. 288. The testator expressly republishes and confirms his will in his codicil, except as thereby changed, showing his intention that this real estate, or, assuming that he was laboring under a mistake of fact, the avails thereof, should go into the residuum, and be disposed of by the residuary clause of his will.

The rule as to void and lapsed devises becoming intestate estate does not govern in a case of revocation such as this. The definition of a void and lapsed devise, as given in 13 Am. & Eng. Ency. Law, p. 28, is as follows: "A void legacy or devise is one which never had any legal existence; a lapsed legacy or devise is one which, originally valid, afterwards fails because the capacity or willingness of the donee to take has ceased to exist before he obtained a vested interest in the gift." This case does not come within the definition of a void legacy, because at one time the devise had a valid existence. Nor does it come within the definition of a lapsed legacy or devise.

*Philip J. Markley*, for Henry H. Northend.

I. Was section seven of the will revoked and annulled by the codicil?

The question to be determined is: What was the intent of the testator at the time of making said codicil? "Wills must be construed by the intent of the devisor at the time of making them." *Greene* v. *Dennis*, 6 Conn., 304.

It is true that the principle of law is that "Where a testator by a codicil revokes a devise or bequest in his will, or

in a previous codicil, expressly grounding such revocation on the assumption of a fact, which turns out to be false, the revocation does not take effect; being, it is considered, conditional, and dependent upon a condition which fails." I Jarman on Wills (1893 Ed.), side page, 147; *Dunham* v. *Averill*, 45 Conn., 61–87. Does this case fall within that rule of law? In the case of *Dunham et al.* v. *Averill*, in the opinion given by PARDEE, J., is to be found a summary of cases cited in support of the principle or rule of law above quoted. It is to be noted that in every case therein, and elsewhere cited, the testator based his revocation upon the assumption of some fact in relation to the devisee which turned out to be false, and not in relation to the estate devised. In the case of *Campbell* v. *French*, 3 Ves. 321, the testator assigned as his " reason for the revocation that they " (his grandchildren) " were all dead," while in fact they were living after his death. In the case of *Evans* v. *Evans*, 10 Adol. & Ellis, 228, the testatrix assigned as her reason for the revocation that " A. had died without leaving issue," while in fact A. did leave a child whose birth was unknown to the testatrix. It is a principle of law that " the law will presume in favor of a devise or legacy that is not annulled by a clause of revocation in a codicil if a mistake as to a fact moves the testator to write it and continue it in force." *Dunham et al.* v. *Averill et al.*, 45 Conn., 80. It is difficult to conceive how a testator can be mistaken about that which he always has within his own observation and within his own knowledge and which is under his own touch, care and custody, and is in fact in his own hands and under his eye every moment of time, as was the real estate specified in section seven of the will. Jarman on Wills (1893 Ed.), side pages, 147, 148; *Dunham* v. *Averill*, 45 Conn., 81, 82.

It is evident, therefore, the testator intended to absolutely revoke said devise to George W. Giddings contained in section seven of the will.

II. Does said estate go to the residuary devisees, or to the heirs at law?

That said real estate goes to the heirs at law is the law of

this State. It is true that in some States lapsed, void and annulled devises fall into the residue, where, by statute, the will is made to speak from the testator's death, both as to real and personal property. Such is the law of the State of New York since the enactment of a law by the legislature of that State making the will speak from the testator's death, both as to real and personal property. *Cruikshank* v. *Home for the Friendless*, 113 N. Y., 354. The same rule is laid down in Massachusetts, since the enactment of a similar statute in that State.

Courts of other jurisdictions laid down the same rule, and were led to the same conclusions by the same reasoning. In Massachusetts in the case of *Thayer* v. *Wellington et al.*, 9 Allen, 295, the court says: "The doctrine of the English courts, and American courts generally, has been that a different rule was to apply in cases of devises of real estate. The reason assigned was, the different operation of a will upon personal property and real estate; that as to the former, the will operated upon all personal estate held by the testator at the time of his death, whereas the testator could only devise the real estate held by him at the time of making the will."

This court has, however, uniformly held that a void, annulled, or lapsed devise, does not fall into the residue of an estate, but must be distributed to the heirs at law as intestate estate. *Greene* v. *Dennis*, 6 Conn., 304; *Brewster* v. *McCall*, 15 Conn., 275; *Remington, Adm'r*, v. *Am. Bible Society et al.*, 44 Conn., 512–518.

FENN, J. The testator, William W. Giddings, died in 1893, seized and possessed of real estate inventoried at $17,050, and personal estate inventoried at $102,147.33. He left a last will executed in 1889, and a codicil executed in 1893, both of which were duly admitted to probate. So much of said will as is here material is as follows: —

"*Fifth.* I give to my son, William H. Giddings, my block on Glen street, bounded etc. *Sixth.* I give to my son, Frederick W. Giddings, my house and lot on Cedar street, bound-

ed etc.  *Seventh.* I give to my son, George W. Giddings, my house and lot Nos. 163 and 165 West Main street, bounded etc. * * * *Ninth.* All the residue of my estate, both real and personal, I give to my three sons, William H. Giddings, Frederick W. Giddings, and George W. Giddings, share and share alike.  *Tenth.* I give to my son, George W. Giddings, after the death of my said wife, the house and lot No. 173 West Main street."

The testator left surviving, his widow, and the three sons named, and a grandson, the child of a deceased daughter, who were his heirs at law.

The codicil, omitting formal parts, is as follows:—

" Whereas, since the execution of said will, I have sold the house and lot 163 and 165 West Main street, devised in section 7 of said will to George W. Giddings, I hereby revoke that portion of said will.

" I have also sold house or block and lot on Glen street, devised in section 5th of said will to William H. Giddings. I therefore give to him the proceeds—five thousand dollars —instead.

" I hereby republish and confirm my said will, except as hereby changed."

At the date of the execution of said codicil the house and lot on Glen street had been sold, but the house and lot on West Main street had not been sold, but was then the property of the testator, and was not sold at the date of his death, but was still owned by him, in his possession, and is now a part of his estate.

Two questions are presented by the reservation for our advice.  *First:* Is the devise mentioned in section 7 of said will, to the said George W. Giddings, revoked by the clause of said codicil to said will.  *Second:* If said devise is held to be so revoked, is said real estate part of the *residuum,* or is it intestate property which should be distributed to the heirs at law of the decedent.

In reference to the first question, in behalf of George W. Giddings, who claims that the devise is not revoked, the case of *Dunham* v. *Averill,* 45 Conn., 62, is relied on.  In that

case it was said, on page 80 : " It is true that the law will presume in favor of a devise or legacy that it is not annulled by a clause of revocation in a codicil if a mistake as to a fact moves the testator to write it and continue it in force, and he states in the writing what the fact is and therein shows that the revocation is made conditional upon its existence." Other authorities cited in the brief support this general statement. Jarman on Wills, Vol. I., p. 351; Schouler on Wills, § 410; Williams on Executors, Vol. I., 5th Ed., 149; *Mordecai* v. *Boylan*, 6 Jones Eq. (N. C.), 365; *Campbell* v. *French*, 3 Vesey, Jr., 321; *Doe* v. *Evans*, 3 Ad., & El., 228. But it is to be borne in mind that the question of revocation is " altogether a matter of intent," and that therefore the rule above stated only holds when it effectuates, and not at all when it defeats intention, and so are the authorities. It will be noticed that our own court, in the quotation above given, expressly limits the rule to cases where the mistake not merely exists, but is the moving cause, and the writing " shows that the revocation is made conditional upon its existence." Schouler also, in his work on Wills, § 410, after stating the rule, and illustrating it by cases where the testator by a later will repealed legacies given by an earlier to his grandchildren, " they being all dead," when in fact they were living; where benefits were conferred upon one described as husband or wife, who turns out not to be legally a spouse, by reason of some prior and existing marriage ; and where a testator treats a gift as made to *A* in an existing will, when it was in fact made to *B*, adds: " This rule regards the testator's intent, and the impulse which moved him to dispose as he did; the courts treat the revocation accordingly as a sort of contingent or conditional one." He further says, that where grounds are stated " of whose falsity or truth the testator judged for himself, this rule does not apply." He adds, also, citing *Gifford* v. *Dyer*, 2 R. I., 99, that not only must the mistake be apparent from the face of the testamentary papers, but also what the will of the testator would have been except for the mistake.

In Redfield on Wills, Vol. I., side p. 359, the author speaks

of the general rule, that legacies and revocations founded in mistake shall not operate, as " very questionable in principle," and gives cogent reasons which would be unanswerable if such rule was to be understood as extending further than to effectuate manifest intention. Perhaps the case nearest in similarity to the present, which can be found in the reports, is that of *Hayes* v. *Hayes*, 21 N. J. Eq., 265. In that case there was a codicil revoking in express terms a legacy in the will, because the testator had provided the legatee with a permanent home, when in fact he had not so provided. It was held that the revocation was operative. The court, citing *Campbell* v. *French*, 3 Vesey, Jr., 321, and *Kennell* v. *Abbott*, 4 Vesey, Jr., 808, claimed to be *contra*, said : " In this case no mistake is shown ; he had not made a provision that was permanent, but he must have known whether he had so provided or not. He had provided a home, and may have intended to make it permanent at some future time, and omitted to do so, either from neglect or because he had changed his mind, which he had a right to do. * * * This case does not fall within the principle of these decisions, and it would be dangerous to extend it. It would cause every recital of a faithful wife, or trusty friend, or honest servant, to be inquired into to affect the validity of the bequest."

In the case before us, whatever may have been the reason why the testator made the statement which he did, in the codicil, concerning the sale of the house and lot on West Main street, regarding which the record is silent, not only must he have known whether he had sold it or not, but there appears to be abundant reason to believe that it could not have been the intention of the testator to make the revocation conditional upon the fact of the sale. Certainly it is not manifest that it was his intention to make it so conditional. It appears that in the will he had given each of his other sons one piece of real estate specifically, but he had given George W. Giddings two pieces, in two separate paragraphs. Declaring that he had sold the parcel devised to William H. Giddings, he gave him, therefore, the proceeds—"five thou-

sand dollars "—instead.   Declaring that he had sold one of the parcels devised to George W. Giddings, he simply revoked " that portion of said will."   Is there any reason why such a sharp discrimination should be made, as probable as that by such revocation, independent of the asserted fact of sale, he would accomplish substantial equality between his sons ?   It seems to us there is not, and that we ought to hold the revocation to be valid, as being intentional, not induced by mistake, and unconditional.

This leads to the remaining question, as to what disposition should be made of this property.   In behalf of the heirs at law, it is claimed that by the settled law of this State, (different, it is admitted, from that of most jurisdictions at the present time,) it becomes intestate.   The case of *Remington* v. *American Bible Society et al.*, 44 Conn., 512, is relied upon in support of this contention.   In that case it was indeed held that a lapsed devise of real estate went to the heirs at law, upon the ground that, quoting *Greene* v. *Dennis*, 6 Conn., 304, HOSMER, J.: " Wills must be construed by the intent of the devisor at the *time of making them*.   Of consequence, when property is given to a person incapable of taking, and there is a general devise of the residue, so far as respects the estate specifically devised at the time of the will's being made, there is an intentional disposition, and it never was designed that it should fall into the residuum.   The law respecting the bequest of personal estate is different, but as to the realty the decisions have been uniform and unquestioned."

Without stopping to inquire whether there is any distinction in principle, on the ground stated, between devises of realty and bequests of personal property, or whether we should now reach the same conclusion if the question were now a new one in this jurisdiction, it is very evident that the case itself has no relevancy to the present query. Neither the rule nor the reason of it applies.   Here is neither a void nor a lapsed devise.   The devise was valid. It did not fail to vest, either first, in consequence of the death of the devisee before the death of the testator, or

second, because notwithstanding the devisee survived the testator, he died before his interest could be said to have vested under the will. Hence there was no lapse. Schouler on Executors and Administrators, § 467. But as we have just held, it was revoked by the testator in his codicil, which in terms confirmed the will. Now " the effect of a codicil which in terms ratifies, confirms, and republishes a will, is to give the original will the same force as if it had been re-written, re-executed, and republished at the date of the codicil. From a will and its several codicils, like a statute with its later amendments, the maker's full intention is to be gathered." Schouler on Executors and Administrators, § 82. " It is a clear principle of the English and American law, that all codicils, however numerous, are to be regarded as parts of the will, and all, together with the will, are to be construed as one instrument. * * * It has often been held, that a codicil may operate as a republication of a former will; which, in effect, it always is, if it recognizes the existence of such an instrument." Redfield on Wills, Vol. I., 288.

It would seem to follow from the above that the will should now be read as if the devise in question having been revoked, was never included in the will, now speaking from the date of the codicil. But if a direct authority to this effect is desirable, it may be found in *Harris* v. *Davis*, 1 Collyer's Reports, 416. In that case the testator bequeathed the rest of his personal estate, and certain freehold and leasehold estates in equal shares, to *L, M, N, O* and *P*. In a subsequent part of his will, he bequeathed to *H* one half of the legacy named to each of the other legatees; that is to say, one half of what his brother *M* ought to receive. By a codicil the testator declared as follows: "I revoke all that part written in my former will, which leaves a legacy to *H* written in my will on the thirty-second and thirty-third lines." It was held that by force of this revocation the will was to be read as if the gift to *H* were not in it; consequently that such revocation enured to the benefit of the other devisees and legatees. During the argument the Vice-Chancellor observed that the language of the codicil as to

the revocation of the legacy to *H*, seemed to amount to a direction by the testator that his will should be read as if all that related to that legacy were struck out with a pencil. His lordship asked Mr. Simpkinson if he was aware of an authority upon that species of revocation. Mr. Simpkinson, *amicus curiœ*, mentioned a case. In the opinion afterwards delivered, his lordship adhered to the view thus expressed.

The Superior Court is advised:—

*First.* The devise mentioned in section seven of the will, to George W. Giddings, was revoked by the codicil.

*Second.* Said real estate referred to in said devise, by said revocation, becomes part of the residuum of the testator's estate.

In this opinion the other judges concurred.