JULIA H. STRONG'S APPEAL FROM PROBATE.

*First Judicial District, Hartford, May Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and CASE, Js.

No act of tearing or cancellation destroys a will unless it be done with the intention of revoking it.

Such an intent may be either absolute and final, or dependent on the existence, or a belief in the existence, of certain circumstances.

A properly-executed will, which in other respects remained intact, had been torn in two by the testatrix because of her belief that it had been superseded by an unsigned and unattested draft-will which she had subsequently written. *Held* that this mistake, although at bottom one of law, was as effectual in preventing an actual revocation of the first will as if it had been an error of pure fact.

Argued May 3d—decided June 5th, 1906.

APPEAL from the refusal of the Court of Probate for the district of New London to admit to probate a certain instrument as the last will of Elizabeth M. Strong of New London, deceased, taken to the Superior Court in New London County, *Gager, J.*, and reserved, upon a finding of facts, for the advice of this court. *Admission to probate advised.*

*Walter C. Noyes*, for Julia H. Strong *et als.*

*Alfred Coit*, for Henry R. Bond *et als.*, executors and trustees.

BALDWIN, J. Jonathan N. Harris died in 1897, leaving by will his residuary estate in trust for twenty-one years and the life of his wife ; a certain share of the annual income to be meanwhile annually paid to a niece of his wife, Miss Elizabeth M. Strong, during her life. At the end of that period, she was, if then living, to have a corresponding share of the principal. She was also given power to dispose by will of both the income and principal of such share,

---

*Transferred from the second judicial district.

should she die before the trust was terminated. A few months later, in the same year, Miss Strong made a will bequeathing a silver tea-set to an uncle, and exercising the power conferred by Mr. Harris in such a way as to give the income of her share of the trust fund to her father for life, remainder to her mother for life, remainder to her sister, the appellant, for life, remainder in fee to her brother.

Subsequently—her father and mother having died and the financial condition of the appellant having improved—Miss Strong expressed the intention of changing her will so as to exercise the power in favor of her brother, alone. After this, in 1905, she fell sick, and died after a three days' illness, during most of which she was delirious. The will of 1897 (which was typewritten) was found in an envelope in her bureau drawer, each page torn in two lengthwise, but the cover untorn. She had written at the top of the first page, " Superseded by written one." In the same envelope was an unsigned draft of a will in her handwriting. This contained the same bequest of the tea-set; provided for the disposition of some other family silver; and ended thus : " The income left to me by the will of Jonathan N. Harris of New London at my death I desire should go to my brother Edward L. Strong the said Edward L. Strong to have said income during his life or in case the trust be terminated, said portion of the principal to be paid to him his heirs & assigns forever."

Neither the typewritten will, nor the written draft, contained any residuary provisions, nor did the latter bear any date or have any subscription clause. Miss Strong's heirs at law were the appellant, her brother, and another sister. Her relations to the appellant were most affectionate. The will was torn a short time previous to her death, but whether during or before her last illness could not be ascertained.

The income and principal of her share (the amount of which was over $15,000) in the trust fund, in default of her exercise of her power, was, by the will of Mr. Harris, to go to certain of his nephews and nieces and their representatives.

The paper presented to the Court of Probate as the will of Miss Strong was in a condition which had some tendency to show that she had revoked it. It had been torn and it had been marked by her as "superseded by written one." It has not been found by the Superior Court that she tore it, but we shall treat the case as if such a finding had been made, and as if whatever she did was done before she became delirious in her last illness.

No act of tearing or cancellation destroys a will unless it be done with the intention of revoking it. An intent to revoke may be either absolute and final, or dependent on the existence, or a belief in the existence, of certain circumstances.

The words "superseded by written one" sufficiently indicate that when Miss Strong wrote them she assumed that the draft in her handwriting then had full testamentary force and effect, and so, as it covered the same ground in a different manner, had destroyed her previous dispositions by will. These were treated as destroyed simply because they had been replaced by something else. Here she was acting under a mistake, and one apparent from the words used to effect the cancellation. This mistake was plainly the sole cause for the revocation which she intended to declare. Unless she exercised the power of disposition given her by Mr. Harris, the fund which was subject to it would go to strangers to her blood. The main object both of the will and of the draft-will was to exercise it.

The case, therefore, is within the reason of the rule that a writing purporting to revoke a will on account of the existence of a certain fact does not revoke it if there be no such fact. *Dunham* v. *Averill*, 45 Conn. 61, 80.

It is true that the mistake is, at bottom, one of law. Miss Strong supposed that her unsigned and unattested will would have full effect upon her decease. In law it had no effect. But as respects a question of this nature, it is immaterial whether the mistake under which the act of revocation was done were one of fact or law. The act was nothing unless done with the intent of revocation. If

the intent to revoke was, as in this case, clearly dependent on a reliance upon a certain legal consequence attributed to certain circumstances, an error in attributing that effect to them is as effectual a bar to an actual revocation as if it were a pure error of fact. *Security Co.* v. *Snow,* 70 Conn. 288, 294, 39 Atl. 153 ; *Stickney* v. *Hammond,* 138 Mass. 116, 120 ; *Clarkson* v. *Clarkson,* 2 Sw. & Tr. 497.

The expression of the motive for the act of cancellation must govern the result of the act of tearing the will. The will and draft-will having been found in the same envelope, it is evident that whatever Miss Strong did constituted one transaction proceeding from the same intent and actuated by the same cause.

It is found by the Superior Court that the will signed in 1897 was executed in all respects according to law, and that Miss Strong was then of full age and sound mind and memory. It should therefore have been admitted to probate.

The Superior Court is advised to disaffirm the decree of the Court of Probate, and admit the paper propounded as the will of Miss Strong to probate, as such.

No costs will be taxed in this court.

In this opinion the other judges concurred.